*In re* PRIMITIVO PAGÁN COLÓN, Respondent.

No. O-70-160. Decided November 12, 1971.

*Gilberto Gierbolini, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor General,* and *Jorge Ríos Torres, Assistant Solicitor General,* for The People. *Noel Colón Martínez, Elfren Bernier, William Fred Santiago,* and *Rodolfo Cruz Contreras* for appellee.

ORDER

A disbarment proceeding alleging the following charge was filed against attorney Primitivo Pagán Colón, admitted to the profession on March 31, 1965:

"The aforesaid Primitivo Pagán Colón on or about March 1969, in Dorado, Puerto Rico, in the place known as Ward Higuillar, being counsel for José Díaz Cruz in the action followed by the People for the offense of buying stolen property (§ 438 of the Penal Code), in an unlawful, voluntary, and malicious manner gathered together the minors Santiago Romero, Jesús Ortiz Rivera, and Juan Luis Matos Rivera, witnesses for the prosecution in said case, and urged and advised them to reject and change the testimonies they had given during the investigation incriminating said defendant Díaz Cruz."

After the complaint was answered denying the charge, the court appointed Antonio S. Negrón García, Special Master before whom the evidence of both parties was presented.

Said Master made, among others, the following findings of fact:

"2. On February 9, 1967, the then prosecuting attorney, Mr. Ramón R. Cabrera, filed a sworn complaint against the citizen named José Díaz Cruz for an alleged violation of § 438 of the Penal Code in force. Said action was filed before the Superior Court, Bayamón Part, Criminal Matter, with the number G-67-63 after determination of probable cause by a magistrate in a preliminary hearing.

"Insofar as pertinent, the same read:

'The prosecuting attorney files complaint against José Díaz Cruz, resident in Ward Higuillar in San Antonio, Dorado, P.R., for the offense of violation of § 438 of the Penal Code (Felony) committed in the following manner: The aforesaid defendant, JOSÉ DÍAZ CRUZ, on or about

December 18, 1966, and in Dorado, P.R., which is part of the Superior Court of P.R., Bayamón Part, unlawfully, voluntarily, maliciously, and criminally, and for the purpose of obtaining profit and of precluding its lawful owner from repossessing his property, and knowing that such property had been stolen, bought from the minors Jesús Díaz Rivera, Ángel Burgos Díaz, Santiago Romero Hernández, and Juan Luis Matos Rivera, wire valued at $301.53 for the sum of $17, the actual value of said property being greater than the amount paid by the defendant and said property belonging to the P.R. Telephone Company.'

"Jesús Díaz Rivera, Ángel Burgos Díaz, Santiago Romero Hernández, and Juan Luis Matos Rivera—all of them minors and residents in the Ward Higuillar in San Antonio, Dorado, Puerto Rico—and Rafael Cuevas Olivella and Sotero Lima, the first, officer of the P.R. Telephone Co., and the second, member of the Detective of Bayamón, appeared as witnesses for the prosecution on the back of the information.

"3. On *February 20, 1967*, said case was called for Arraignment, the state being represented by the prosecuting attorney José A. Vargas and the defendant Díaz—who did not appear—by respondent Mr. Primitivo Pagán Colón. Because of said defendant's nonappearance the arraignment was postponed for February 28, 1967. On this date and hearing he was represented by Mr. Fermín Arraiza, the information was considered as read, a plea of not guilty was made and the hearing on the merits was set for *March 21, 1967*.

"4. On a day corresponding to an uncertain weekend of the month of March 1967—prior to the aforementioned date set for the trial—the respondent, Mr. Primitivo Pagán Colón, and his brother, Mr. José J. Pagán, went during the afternoon to the store and residence of the defendant Díaz located in the Ward Higuillar in San Antonio, Dorado, Puerto Rico, to become acquainted with the details of the case where the former represented Díaz. While in said place, they located the minors Jesús Ríos Rivera, known as 'Chuito,' Santiago Romero Hernández, nicknamed 'Chavita,' and Juan Luis Matos Rivera, and they agreed to go to the place where said minors had obtained the wire which they had sold to Díaz. For said purpose they went in the automobile belonging and driven by the respondent P. Pagán

Colón as far as the road allowed and from there on they went and walked the zone; which is eminently rural with vegetation. In the area in question, the aforementioned youths answered several questions and showed the poles of the telephone lines from where they had cut the wire. They also informed and pointed out specific points where on other occasions and at different times they had obtained copper wire which was hanging and had fallen in an apparent state of abandonment. At a specific moment during the course of such conversations, the respondent, Mr. Primitivo Pagán Colón, urged them to say and testify at the trial set, that they had not cut the wire from the poles, but that they had found it hanging and on the ground (land surface). The minors insisted on their original positions, and Mr. P. Pagán did not insist on that particular at that time or on a subsequent stage. In making such a suggestion, said lawyer did not make any threat or offer of any kind whatsoever, and that matter was not mentioned again.

"5. The wire in question which gave rise to the aforementioned criminal complaint, belonged to a line property of the Puerto Rico Telephone Company located over the railroad track —which once had thirty (30) copper wires corresponding to fifteen (15) circuits—and connected the zones and towns comprised between Bayamón and Vega Baja. During the course of the last years, because of the fact that said line was located in a distant and scarcely populated rural area—exposed to vandalism and difficult maintenance—was left unused and substituted for the microwave system. Late in 1966 and at the beginning of 1967 there were only four (4) cables in use and service corresponding to two (2) circuits giving service to Vega Baja. The remaining cables had been abandoned, missing by robbery and lack of maintenance since the Puerto Rico Telephone Co., for economy reasons, did not remove them when they were substituted for the microwave system.

"6. Respondent Primitivo Pagán Colón submitted a motion to the court, signed on March 15, 1967, and filed on the 17th, requesting the dismissal of the information on the grounds of res judicata and/or double jeopardy. To support said petition he alleged as facts that on March 15, 1967, in the District Court, Dorado Part, defendant Díaz had been tried and acquitted of a charge of buying stolen objects (misdemeanor) where the

witnesses stated that there was only a transaction for the amount of 3,600 feet in pieces of wire. The question, having been set for April 25, 1967, was dismissed in view of his nonappearance.

"7. On July 20, 1967, the trial was held before a jury, the defendant being counseled by the respondent Mr. P. Pagán Colón. In said hearing the minors Jesús Díaz Rivera, Santiago Romero Hernández, and Juan Luis Matos Rivera testified, among others, as witnesses for the prosecution and a verdict of guilty was rendered. On July 28, 1967, Díaz was sentenced to one (1) year in jail, sentence which was suspended. Said decision became final and unappealable when no appeal was brought against the same." (Master's Report, pp. 2 to 6.)

The findings of the Master to the effect that "Primitivo Pagán Colón urged [the minors] to say and testify at the trial set, that they had not cut the wire from the poles, but that they had found it hanging and on the ground (land surface)" and that "The minors insisted on their original positions, and Mr. P. Pagán did not insist on that particular at that time or on a subsequent stage" and that "in making such a suggestion, he did not make any threat or offer of any kind whatsoever, and that matter was not mentioned again," are supported by the testimonies of the minors. From the record it appears also that at that time some of the minors told Mr. Pagán that they had found the wires on the ground and in the lagoon.

■ The suggestion made by Mr. Pagán to the minors did not have any consequence whatsoever. However we must judge the attorney's conduct independently of the consequences in this case.

■ The fact that an attorney, while examining the witnesses for the prosecution outside the court, urges them to alter their testimonies in any detail, which in the opinion of the attorney could be favorable to the defendant represented by him, constitutes reprehensible conduct. Suborna-

tion of perjury on the part of an attorney is one of the most serious violations of the canons of professional ethics. In this case respondent exposed himself to be removed from the practice of his profession. However, considering all the circumstances which the record reveals, the Court decides to censure, as it does censure now, the conduct of the respondent in this case.

It was so agreed by the Court and certified by the Acting Clerk.

Mr. Chief Justice Negrón Fernández did not participate herein.

(s) JOSÉ L. CARRASQUILLO